UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAN SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-2372 (RCL) |
| ) | |
| JOYCE K. CONLEY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

FILED
SEP 26 2012
Clerk, U.S. District and
Bankruptcy Courts

## MEMORANDUM OPINION

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint.[1] For the reasons discussed below, the motion will be granted in part and denied in part without prejudice.

### I. BACKGROUND

Plaintiff, a former federal prisoner, brings this action against the Federal Bureau of Prisons ("BOP") under the Privacy Act, *see* 5 U.S.C. § 552a, and against assorted BOP officials in their individual capacities under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). In addition, plaintiff alleges violations of rights protected under the First and Fifth Amendments to the United States Constitution by all defendants.

*A. Handling of Plaintiff's Mail, Telephone Calls and Publications*

---

[1] Plaintiff has amended his original complaint ("Compl.") [Dkt. #1] twice -- on January 14, 2010 ("Am. Compl.") [Dkt. # 6] and on August 3, 2011 ("2d Am. Compl.") [Dkt. #55].

1

Plaintiff acknowledges a Warden's authority "to reject correspondence (including emails) . . . sent by or to an inmate" but notes that the Warden may do so only if it is deemed "'detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.'" Compl. ¶ 13 (quoting 28 C.F.R. § 540.14(d)). To this end, the Warden may "reject correspondence (including emails)," if, for example, the correspondence "depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption," includes plans to commit illegal activities or to violate BOP regulations, or indicates "direction of an inmate's business." *Id.* ¶ 13. And a Warden "may reject a publication . . . if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." 28 C.F.R. § 540.71(b). Such circumstances may exist if the publication describes procedures for constructing or using weapons or incendiary devices, brewing alcoholic beverages, manufacturing drugs, or contains sexually explicit material. *See* Compl. ¶ 14.

The BOP has established a Counter-Terrorism Unit ("CTU"), the staff of which is principally "responsible for monitoring and analyzing domestic and international terrorist-related intelligence and information." Reply Mem. of Law to Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 62 ("Reply"), Smith Decl. ¶ 2. It also established a Communications Management Unit ("CMU"), designed "to provide an inmate housing unit that enables staff to more effectively monitor communications between CMU inmates and persons in the community." *Id.*, Smith Decl. ¶ 5 (citation omitted).

A CMU inmate need not be linked to terrorist activity to qualify for CMU placement. Any inmate whose "current offense(s) of conviction . . . or activity while incarcerated, indicates a propensity to encourage, coordinate, facility [sic], or otherwise act in furtherance of, illegal

2

activity through communication with persons in the community" may be assigned to a CMU. *Id.*, Smith Decl. ¶ 6(b). Plaintiff is such an inmate.

"While in BOP custody, Plaintiff . . . engaged in a scheme to defraud class action claims administrators and members of class action settlements, by filing false claims in class action settlements of securities fraud cases. This scheme unfolded with the unknowing assistance of various members of the public, including numerous reference librarians at public libraries." *Id.*, Smith Decl. ¶ 9. Based on his criminal history, plaintiff was transferred to a CMU at the Federal Correctional Complex in Terre Haute, Indiana ("FCC Terre Haute"), described by plaintiff as a unit "under the direct control and supervision in all aspects . . . by the [CTU]." Compl. ¶ 7. The BOP's notice to plaintiff explained the transfer as follows:

> Your offenses of conviction include Conspiracy to Commit Mail Fraud; Conspiracy to Commit Bank Fraud; Possession of Forged Securities; Conspiracy to Make False Claims Against the U.S.; and Income Tax Evasion. Your incarceration conduct has included orchestrating a scheme to defraud class action settlements by filing false claims in securities fraud cases; filing fraudulent income tax returns and frequent[] misuse/abuse of legal mail. Your latest conviction involved misuse of legal mail and you were again recently disciplined for further misuse/abuse of legal mail. Your contact with persons in the community requires heightened controls and review.

Defs.' Mem. of P. & A. in Supp. of their Mot. to Dismiss Pl.'s Compl. and Am. Compl., ECF Nos. 1, 6,, 55 ("Defs.' Mem."), Ex. A (Notice to Inmate of Transfer to Communication Management Unit dated March 9, 2009).

At the CMU, "[a]ll social phone calls made by inmates must be approved by CTU staff," scheduled one week in advance, and "limited to a 30-minute 'window' between 8:00 AM to 3:00 PM on non-holiday weekdays." Compl. ¶ 7. Calls are "live monitored" by CTU staff, *id.*, and are "automatically tape-recorded," *id.* ¶ 8. Recordings of calls made by CMU inmates "are maintained by the BOP indefinitely including beyond the inmate's release and/or expiration of

his sentence," yet recordings of non-CMU inmates' calls are maintained for only nine months. *Id.*

"All social mail received by or sent by an inmate is scanned and sent electronically to [the] CTU" for approval prior to delivery to or from the inmate. *Id.* ¶ 7. Emails on the inmate Trulincs system are handled in the same manner. *Id.* Mail "must be sent to or received from an address that is approved by defendants." *Id.* The electronic copies of such correspondence "are maintained indefinitely and beyond the inmate[']s release and/or expiration of his sentence," but the BOP does not maintain copies of non-CMU inmates' correspondence after their release from custody. *Id.* ¶ 9.

*B. Allegations of Plaintiff's Complaint, As Amended*

1. *Bivens* Claims

According to plaintiff, Joyce K. Conley, Les Smith, and other BOP officials "conspired together in concert to violate plaintiff's constitutional rights under the First and Fifth Amendments . . . [by] causing [plaintiff's] mail to be rejected both incoming and outgoing whenever that mail contained such items as bank, stockbroker [or] credit card statements, credit reports, [or] tax statements . . . relat[ing] to [his] personal financial affairs." Compl. ¶ 17; *see id.* ¶¶ 18-26; *see also* Am. Compl. ¶¶ 17(A-B); 2d Am. Compl. ¶¶ 17(B), 32(B). These defendants also blocked "any correspondence both incoming and outgoing and emails of plaintiff's home address in Taunton, Massachusetts," Compl. ¶ 19, and "have caused the rejection of correspondence . . . including . . . bank account statements, credit card statements, stock brokerage statements, . . . personal credit reports, form 1099's from holdings in publicly held companies, annual reports of publicly held corporations, and correspondence and requests for

4

information made to him by banks and credit card companies." *Id.* ¶ 21. Additionally, these defendants also have caused the rejection of publications titled "Spies Among Us: How to Stop the [S]pies, [T]errorists, [H]ackers, and [C]riminals [Y]ou [D]on't [E]ven [K]now [Y]ou [E]ncounter [E]very [D]ay," "Hacking Exposed Computer Forensics: Secrets and Solutions," *id.* ¶ 18, and "Crime School: Money Laundering," 2d Am. Compl. ¶ 17(B)(k). Plaintiff has deemed these actions violations of rights protected under the First and Fifth Amendments to the United States Constitution, *see* Compl. ¶ 19, for which he demands unspecified injunctive relief, a declaratory judgment, and compensatory and punitive damages in an unspecified amount, *id.* ¶ 32.

Since these events occurred, plaintiff has been released from custody. Defendants argue, *see* Defs.' Mem. at 14-16, and plaintiff concedes, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss [Dkt. #63] at 2, that all the *Bivens* claims arising from the handling of his telephone calls, correspondence and publications are now moot.[2] His remaining claims arise under the Privacy Act and are brought against the BOP alone.[3]

2. Privacy Act Claims

---

[2] Because the mail-related claims are now moot, the Court will deny plaintiff's Motion to Reconsider Denial of Leave to File Plaintiff's Motion for Partial Summary Judgment [Dkt. #66] and Motion to Substitute John Doe # Defendant and File Waiver [Dkt. #67].

[3] Defendants move to dismiss on several grounds, most of which are no longer relevant because plaintiff's mail-related claims are moot. The Court, therefore, need not discuss whether sovereign immunity bars claims against the individual defendants in their official capacities, *see* Defs.' Mem. at 16-17, whether service of process has been effected on and whether the Court lacks personal jurisdiction over the individual defendants, *see id.* at 17-22, whether plaintiff's *Bivens* claims should be dismissed for improper venue, *see id.* at 22-23, whether plaintiff exhausted the administrative remedies, *see id.* at 24-25, whether *respondeat superior* applies, *see id.* at 26-27, and whether the individual defendants are protected by qualified immunity, *see id.* at 28-36. Nor does the Court address plaintiff's request for a preliminary injunction, as "plaintiff has abandoned the preliminary injunction quest due to his release." Pl.'s Opp'n at 9.

According to plaintiff, the BOP maintains "a system of records that is not authorized by 5 U.S.C. [§] 552a(e)(1) and 5 U.S.C. [§] 552a(e)(7) and which has not been exempted pursuant to 28 CFR 16.97." Compl. ¶ 27; *see id.* ¶ 9. This system of records apparently contains recordings of inmate telephone calls, *see id.* ¶ 8, and electronic copies of social mail, *id.* ¶ 9. In addition, plaintiff contends that BOP's CTU "maintains various system[s] of records in its offices that . . . parallel the same type of records that also exist" at BOP facilities, "including the CMU/CTU at FCC Terre Haute." *Id.* ¶ 11.

Plaintiff alleges that the BOP not only collects records unlawfully, but also uses these records "in a manner that causes . . . an adverse effect on plaintiff," *id.* ¶ 28, particularly by releasing information about him "to persons or companies not authorized to receive such disclosures," *id.* ¶ 30, in violation of 5 U.S.C. § 552a(b). For example, plaintiff alleges that the BOP has "given unsolicited notice and information to certain of plaintiff's creditors that plaintiff [was] incarcerated and as a direct result . . . plaintiff's long-standing account(s) were closed" even though the accounts were not delinquent. Compl. ¶ 31.

Plaintiff's next claim arises from the BOP's "refus[al] to disclose to plaintiff material (4 folders of records as of September 20, 2009) collected on or pertaining to plaintiff." *Id.* This action, he alleges, violates the Privacy Act, Am. Compl. ¶ 28(A), and plaintiff demands "injunctive relief that would enjoin [the BOP] from maintaining in any form, be it written, microfilm, or electronic, of any records collected by its CTU," such as recorded telephone calls or copies of emails or correspondence, after plaintiff's release from incarceration," *id.* ¶ 32(A).

## II. DISCUSSION

### A. Agency Obligations Under the Privacy Act

"The [Privacy] Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao,* 540 U.S. 614, 618 (2004). For Privacy Act purposes, a "record" is "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains [the individual's] name, or the identifying number, symbol, or other identifying particular . . . such as a finger[print] . . . or a photograph." 5 U.S.C. § 552a(a)(4). Such information may include the individual's "education, financial transactions, medical history, and criminal and employment history." *Id.* A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5).

Generally, the Privacy Act prohibits an agency from "disclos[ing] any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." *Id.* § 552a(b). There are twelve exceptions to this rule, however. *See id.* § 552a(b)(1-12). In addition, the Privacy Act requires an agency to "keep an accurate accounting of . . . the date, nature, and purpose of each disclosure of a record to any person . . . ; and the name and address of the person or agency to whom the disclosure is made." *Id.* § 552a(c)(1). The agency must "make the accounting . . . available to the individual named in the record at his request." *Id.* § 552a(c)(3). And an agency must "inform any person or other agency about any correction or notation of dispute made by the agency . . . of any record that has been disclosed to the person or agency if an accounting of the disclosure was made." *Id.* § 552a(c)(4).

*B. The CTU's "System of Records"*

Plaintiff alleges that the BOP maintains an unauthorized system of records, which includes recordings of telephone calls and electronic copies of written and email correspondence, in violation of 5 U.S.C. [§] 552a(e)(7). *See* Compl. ¶¶ 7-11. He further alleges that the BOP intends "to retain that information on an indefinite and undefined basis," *id.* ¶ 29, and that the BOP has disclosed information about him "to persons or companies not authorized to receive such disclosures by 5 U.S.C. [§] 552a(b)(1-12) and in violation of 5 U.S.C. [§] 552a(b)," to his detriment. Compl. ¶ 30.

The BOP argues that the relevant system of records has been exempted from these Privacy Act provisions, *see* 5 U.S.C. § 552a(d)(3-4), pursuant to the authority granted to the BOP's Director, *see* 5 U.S.C. § 552a(j). Defs.' Mem. at 38; *see id.*, Ex. I (Letter to plaintiff from Wanda M. Hunt, Chief, FOIA/PA Section, BOP, dated September 5, 2009) at 1. The CTU apparently "does not have its own [system of records]" and instead "utilizes existing [systems] to house documents pertinent to inmates housed in CMU[s]." Reply at 12. Counsel represents that the BOP "modified and expanded" an existing system, the Custodial and Security Record System (JUSTICE/BOP-001) in 2002, renamed it the Prison Security and Intelligence Record System (JUSTICE/BOP-001), and since has maintained "all the records gathered by the [BOP's] Office of Intelligence that would aid in investigatory efforts." Defs.' Mem. at 38. This circumstance is not apparent from the language of the notice published in the Federal Register, *see* 67 Fed. Reg. 41449 (June 18, 2002), to which counsel refers, nor from the declarations submitted in support of the BOP's motion to dismiss. The Court cannot determine whether the records plaintiff describes – recordings of telephone calls and copies of mail and email correspondence collected by the CTU – are among the records maintained in the Prison Security and Intelligence Record

System. Nor can the Court determine the relationship between the CTU, CMUs, BOP's Office of Intelligence, and the Prison Security and Intelligence Record System. And without a clear understanding of the "system of records" at issue, the Court cannot determine whether the system is exempt from any provisions of the Privacy Act.

### III. CONCLUSION

For the reasons stated above, defendants' motion to dismiss will be granted in part and denied in part without prejudice, and plaintiff's pending motions will be denied as moot. An Order accompanies this Memorandum Opinion.

DATE: 9/25/12

ROYCE C. LAMBERTH
United States District Judge